### UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF VERMONT

RLI INSURANCE COMPANY,    :
            :
   Plaintiff,     :
            :
   v.         : Case No. 2:09-cv-157
            :
ARTHUR KLONSKY, JANE KLONSKY and :
MARIA ROSATONE,      :
            :
   Defendants.    :
            :

### OPINION and ORDER

Plaintiff RLI Insurance Company ("RLI") seeks a judicial determination of its rights and responsibilities under a policy of personal umbrella liability insurance issued to Defendants Arthur and Jane Klonsky.  The Klonskys are responsible for injuries sustained by Defendant Maria Rosatone in an automobile accident in 2008.  Rosatone filed a claim with RLI under the Klonskys' policy.  RLI denied coverage on the ground that the policy was void because Arthur Klonsky had made material misrepresentations about the Klonskys' motor vehicle history when he applied for and renewed their policy.  RLI then filed this declaratory judgment action against the Klonskys and Rosatone.

The Defendants counterclaimed, alleging violations of Massachusetts General Laws chapter 93A and 176D, common law bad faith, breach of contract and violation of the Federal Fair Credit Reporting Act.  RLI and Defendants have filed cross-motions for summary judgment.  For the reasons that follow, the

Defendants' motion, ECF No. 65, is **denied;** RLI's motion, ECF No. 74, is **granted in part** and **denied in part.**

### Background

The following facts are undisputed, except where noted.  RLI is an insurance company incorporated under Illinois law and having a principal place of business in Peoria, Illinois.  Among its insurance products, RLI offers personal umbrella liability policies.  These policies provide an additional layer of liability protection over an insured's existing homeowners and automobile insurance policies.  RLI considers its personal umbrella liability policies to be "self-underwriting," meaning that RLI allows applicants to determine their own eligibility to obtain or renew a policy based on the information they submit to RLI.

Defendant Arthur Klonsky submitted an application for insurance to RLI, dated July 25, 2007, intended to cover all drivers in the household (himself, his wife Jane and their daughter).  In response to questions on the application, Arthur Klonsky stated that all drivers had a total of three moving violations in the past three years; that no drivers had any at-fault accidents in the last three years; and that no one driver had more than three moving violations in the past three years. Jane Klonsky did not submit information to RLI, nor did she sign the application.

2

Based on the information supplied by Arthur Klonsky, RLI issued Arthur and Jane Klonsky a personal umbrella liability insurance policy, PUP0396453 ("the Policy"), with a policy term of July 25, 2007 to July 25, 2008.  The Policy provided for $2 million in coverage over the Klonskys' homeowners and automobile insurance policies.

Arthur Klonsky submitted a renewal application the following year.  The application contained the same questions.  In the renewal application Arthur Klonsky stated that the total of moving violations was three; that no driver had an at-fault accident; that no driver had his license suspended within the last five years; and that no one driver had more than three moving violations.  Again, Jane Klonsky did not provide any information to RLI, nor did she sign the renewal application. Based on the information supplied by Arthur Klonsky, RLI renewed the Klonskys' policy for the period July 25, 2008 to July 25, 2009.

This information was untrue.  As of July 2007, Arthur Klonsky had a total of four moving violations, and Jane Klonsky had one moving violation and an at-fault accident.  As of July 2008, Arthur Klonsky had a total of five moving violations and had his license suspended in October 2007, and Jane Klonsky had one moving violation and an at-fault accident.

Above an applicant's signature, the policy application

3

contains the following:

> APPLICANT STATEMENT:  The information given on this
> application is true and complete to the best of my
> knowledge.  I understand that any omission or
> misstatement of fact in the information given, which if
> known by RLI Insurance Company would have caused RLI
> Insurance Company to decline this application, is
> grounds for voiding the policy.

PUP Appl. 4, ECF No. 77-2; PUP Renewal Appl. 2, ECF No. 77-7.

The policy application also notifies the applicant that RLI may

obtain information regarding the applicant's driving record.[1]

The parties agree that had Arthur Klonsky submitted an

accurate application, RLI would have declined to issue the

policy.  Had he submitted an accurate renewal application, RLI

would have declined to renew the policy.

In its Vermont Amendatory Endorsement, the Policy provides

that:

> This insurance is void if you intentionally concealed
> or misrepresented any material fact or circumstance
> relating to this insurance at the time you applied for

---

[1]  The notice reads:
IMPORTANT NOTICE REGARDING THE FAIR CREDIT REPORTING
ACT:  I understand that as part of the underwriting
procedure, a consumer report may be obtained or an
investigative consumer report may be prepared.  Such
reports may include information regarding my driving
record, credit history, general reputation, personal
characteristics and mode of living.  I hereby consent
to the preparation of such reports and the disclosure
of such reports to [RLI] and the producer of record.  I
understand that these reports will be handled in the
strictest confidence, and that information as to the
nature and scope of these reports will be provided to
me upon request.
PUP Appl. 4, ECF No. 77-2; PUP Renewal Appl. 2, ECF No. 77-7.

```
this policy.  Further we will not pay for any loss or
damage in any case of:
1) Concealment or misrepresentation of a material fact;
or
2) Fraud
committed by you before the effective date of this
policy.
```

Policy, Vt. Amendatory Endorsement 4, ECF No. 77-4, 77-8.

RLI's underwriting branch can obtain Motor Vehicle Reports ("MVRs") on insurance applicants from the Insurance Information Exchange ("iiX"). RLI's policy is not to obtain MVRs on applicants unless the application discloses a "youthful driver," defined as someone under the age of 22. Dean Dep. 27:4-25, Feb. 4, 2010, ECF No. 65-10. RLI did not obtain MVRs for the Klonskys at the time of the application or its renewal, and did not check the accuracy of Arthur Klonsky's statements regarding the Klonsky's driving records. Nor did RLI seek information from Jane Klonsky or require her to submit an application or to certify the accuracy of information on the application Arthur Klonsky submitted. It did, however, obtain an MVR for the Klonskys' daughter, who was under the age of 22 at the time of the application and the renewal application.

On November 15, 2008, the Klonskys' automobile, with Arthur Klonsky driving and Jane Klonsky in the passenger's seat, accidentally collided with Rosatone, a pedestrian, in Lynnfield, Massachusetts. Rosatone was seriously injured.

The Klonskys had primary automobile insurance coverage with

Progressive Insurance Company ("Progressive") with policy limits of $500,000.00.  On February 3, 2009, RLI was notified of the accident and of the possibility that the losses might exceed the Progressive policy limits.

RLI's policy is to obtain MVRs when RLI is notified of a claim for the purpose of verifying the information in the insurance application, to confirm whether the applicant was eligible for coverage and to determine whether or not to renew the policy.  RLI's underwriting branch obtained MVRs for the Klonskys on February 6, 2009.  RLI certified to iiX that the Klonskys' MVRs would only be used for underwriting purposes.

Upon receiving notice of the claim RLI assigned a claims examiner, Mary Snodgrass, to investigate the claim.  Among other tasks, Snodgrass reviewed the MVRs generated by RLI's underwriting branch.  Shortly thereafter, in February 2009, Snodgrass discussed coverage issues with RLI's vice president for claims, Andrea Dean.  Dean concluded that the information in the MVR likely disqualified Arthur Klonsky from coverage.

On April 14, 2009, Rosatone made a settlement demand of $1 million.

On April 27, 2009, Dean transferred the file to claims director Robert Handzel, who transferred the file to a senior claims examiner, Michael Stockbridge, on May 8, 2009.

On May 4, 2009, RLI sent the Klonskys a renewal application

for their policy.

On May 16, 2009, Rosatone raised her demand to $1.2 million. RLI was advised on May 19, 2009, that Rosatone's medical expenses continued to rise, and that the demand would likely be raised further.  On May 27, 2009, Rosatone's counsel presented a demand for $2 million to RLI pursuant to Massachusetts General Laws chapters 93A and 176D, claiming that RLI was unreasonably delaying settlement of her claim.  Rosatone demand letter, ECF No. 77-18.

On June 17, 2009, Handzel created a separate coverage file to further investigate the coverage issue.  RLI determined that Arthur Klonsky's misrepresentations on the application and renewal application were material to its decision to issue the Policy, and that therefore the policy was void and the Klonskys were not entitled to coverage.  It also determined that the Klonskys breached the express terms and conditions of the Policy. RLI communicated its decision to the Klonskys by letter on June 26, 2009, *see* Handzel letter, ECF No. 77-10, and filed this declaratory action complaint.

RLI also responded to Rosatone's demand letter on June 26, 2009, stating among other things that its investigation had revealed issues concerning whether coverage was available "due to material misrepresentations apparently made by the insureds in their application for the RLI Policy," and that it had no

7

obligation to pay claims made against the Klonskys until it could
confirm the existence of coverage.  Stockbridge letter, ECF No.
77-17.  Rosatone thereupon brought suit in Massachusetts against
the Klonskys and RLI.

In August 2009, the Klonskys and Rosatone settled the
Massachusetts suit.  Their settlement agreement provided for
judgment for Rosatone in the amount of $2.5 million (the limits
of both policies) in exchange for an assignment of all rights
under the RLI Policy to Rosatone and Rosatone's agreement not to
execute against any of the Klonskys' assets.

**Analysis**

**I.   Standard**

Summary judgment is granted "if the movant shows that there
is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).
"A party asserting that a fact cannot be or is genuinely disputed
must support the assertion by . . . citing to particular parts of
materials in the record, . . . or . . . showing that the
materials cited do not establish the absence or presence of a
genuine dispute, or that an adverse party cannot produce
admissible evidence to support the fact."  Fed. R. Civ. P.
56(c)(1).  A court's role in deciding motions for summary
judgment "'is not to resolve disputed issues of fact but to
assess whether there are any factual issues to be tried, while

resolving ambiguities and drawing reasonable inferences against the moving party.'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010) (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986)).

The Court applies the law of the state of Vermont in cases where jurisdiction is based on diversity of citizenship, *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), including Vermont's choice of law principles. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *accord Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 871 (2d Cir. 1994).

## II. Count I: Rescission; Count II: Declaration of No Coverage

RLI's Count I alleges that section 4205 of Title 8 Vermont Statutes Annotated entitles RLI to a declaration that the Policy is void because of material misrepresentations made in the Policy application and renewal application.  Count II alleges that in the event the policy is not void, RLI is entitled to a declaration that there is no coverage for Rosatone's claim because Arthur Klonsky made material misrepresentations in the application and the renewal application.[2]

### A.   Count I:  As to Defendant Arthur Klonsky

"The effect of false statements in applications for

---

[2] Count II also alleges that RLI is entitled to a declaration of no coverage because the Klonskys entered into a settlement agreement with Rosatone without notifying RLI and seeking its consent.  RLI does not seek summary judgment on this ground.

liability insurance policies is governed by [section 4205]."
*McAllister v. Avemco Ins. Co.*, 528 A.2d 758, 759 (Vt. 1987).
Section 4205 provides that "The falsity of a statement in the
application for a policy . . . shall not bar the right to
recovery thereunder unless such false statement was made with
actual intent to deceive or unless it materially affected either
the acceptance of the risk or the hazard assumed by insurer."
Vt. Stat. Ann. tit. 8, § 4205 (2005).  An insurer can satisfy
this standard by "establish[ing] that there is a causal
connection between the misrepresentation and the insurer's
decision to issue a policy."  *McAllister*, 528 A.2d at 759.  "A
material misrepresentation in an application for liability
insurance . . . is grounds for declaring the policy void ab
initio" and "[i]t makes no difference under Vermont law that the
misrepresentation was innocently made."  *Id.*

It is undisputed that Arthur Klonsky made misrepresentations
on the policy application and renewal application.  It is also
undisputed that the misrepresentations were material; that is,
RLI would have declined to issue or renew the Policy had the
Klonskys' driving record been accurately reported.  If the
statute applies, then RLI is entitled as a matter of law to void
the Policy.

The Defendants contend that RLI has waived the protection of
section 4205 because the Klonskys' policy requires that a

10

misrepresentation must be intentional in order to void the policy.  The Policy's Vermont Amendatory Endorsement states that the insurance is void "if you intentionally concealed or misrepresented any material fact or circumstance relating to this insurance at the time you applied for this policy."  Policy, Vt. Amendatory Endorsement 4, ECF No. 77-4, 77-8.  Directly following this statement is language that specifies circumstances under which the insurer will not pay for loss or damage:  concealment or misrepresentation of a material fact, or fraud, that is committed by the insured before the effective date of the Policy. *Id.*

"'An insurance policy must be construed according to its terms and the evident intent of the parties as expressed in the policy language . . . . Disputed terms should be read according to their plain, ordinary and popular meaning.'"  *Agency of Natural Res. v. U.S. Fire Ins. Co.*, 796 A.2d 476, 480 (Vt. 2001) (quoting *N. Sec. Ins. Co. v. Perron*, 777 A.2d 151, 154 (Vt. 2001)).  Any "ambiguity is resolved in favor of the insured party," *Am. Prot. Ins. Co. v. McMahan*, 562 A.2d 462, 464 (Vt. 1989), although a court is "bound to enforce the contract as written and not to rewrite it on behalf of one or both of the parties." *Waters v. Concord Grp. Ins. Cos.*, 725 A.2d 923, 926 (Vt. 1999).

As RLI points out, the Amendatory Endorsement altered the

11

original RLI Policy language, which provided that "this insurance is void if you intentionally conceal or misrepresent any material fact or circumstance relating to this insurance at any time." Policy 7, ECF No. 77-4, 77-8.  RLI argues that it intended to alter the language in order to comply with section 4205 which provides for rescission based upon unintentional material misrepresentations in the application for insurance, not at any time.

According to the plain language of the Amendatory Endorsement, RLI achieved partial success.  From the language it is clear that RLI may void the Policy if its insured intentionally concealed or misrepresented a material fact when applying for the insurance.  The unintentional misrepresentation, however, does not provide grounds to void the Policy, according to the Policy's terms.  The Amendatory Endorsement provides that RLI may refuse coverage in the case of a material misrepresentation that has not been shown to be intentional; it does not provide that RLI may void the Policy.

RLI objects that this plain language interpretation would render parts of the RLI Policy applications surplusage.  RLI's application and renewal forms provide that "any omission or misstatement of fact in the information given, which if known by [RLI] would have caused [RLI] to decline this application, is grounds for voiding the policy."  PUP Appl. 4, ECF No. 77-2; PUP

12

Renewal Appl. 2, ECF No. 77-7.

The problem with this argument is that there is no evidence that the policy applications form part of the contract between the Klonskys and RLI.  In the absence of any ambiguity, the Klonskys are entitled to rely upon the plain language of their Policy.  *See, e.g.*, *Northern Sec. Ins. Co. v. Doherty*, 2009 VT 27, ¶ 8, 987 A.2d 253, 256.  Were the Court to interpret the Policy language to permit RLI to void the Policy based upon unintentional or negligent misrepresentations, the Court would be treating as surplusage the intentional misrepresentation language in the Policy.  This is prohibited by traditional rules of contract construction, which require giving effect to every material part of a contract if possible.  *See DeBartolo v. Underwriters at Lloyd's of London*, 925 A.2d 1018, 1024 (citing *Vt. State Colls. Staff Fed'n v. Vt. State Colls.*, 596 A.2d 355, 357 (1991) (entry order)).  It would distort the plain language of the Policy and thwart the reasonable expectations of the policyholders.  *See, e.g.*, *Clarendon Nat'l Ins. Co. v. Ins. Co. of the West*, 442 F. Supp. 2d 914, 926 (E.D. Cal. 2006) (holding that policy language bound insurer to intentional misrepresentation in order to rescind policy, a stricter standard than that permitted by statute), *aff'd* 290 F. App'x 62 (9th Cir. 2008).

RLI is not entitled to summary judgment on Count I with

respect to Arthur Klonsky.  Because the policy language requires an intentional misrepresentation in order to void the Policy, section 4205--and case law interpreting the statute--does not apply.  An insurer is free to provide more favorable coverage to its insured than is required by statute.  *See State Farm Mut. Auto Ins. Co. v. Powers*, 732 A.2d 730, 735 (Vt. 1999) ("Unless prohibited by statute or public policy, an insurer's liability is controlled by its policy provisions . . . .").

In order to prevail at trial on Count I, RLI will have to show that Arthur Klonsky made an intentional misrepresentation. Although the Defendants argue that RLI has no evidence that his errors were intentional, this issue of intent cannot be resolved at summary judgment, and summary judgment is denied as well to the Defendants on Count I with respect to Arthur Klonsky.

**B.   Count II: As to Arthur Klonsky**

The Policy provides, in the Vermont Amendatory Endorsement, that RLI "will not pay for any loss or damage in any case of . . . concealment or misrepresentation of a material fact . . . committed by you before the effective date of this policy." Policy, Vt. Amendatory Endorsement 4, ECF No. 77-4, 77-8.  The Defendants make two arguments in an effort to defeat summary judgment on this point.  The first is textual:  the Defendants argue that this language means that RLI may refuse to pay losses if the misrepresentation occurred after the time of the

14

application but before the effective date of the policy. Otherwise, they contend, the Policy language that allows an intentional misrepresentation on an application to void the Policy would be surplusage.

This is a strained interpretation of the Policy language. Construing the language as a whole, the first sentence enables the insurer to void the Policy as a result of an intentional misrepresentation of a material fact at the time of the application.  The second sentence enables the insurer to refuse to pay on a loss if its insured misrepresented a material fact before the effective date of the policy.  Thus, a material misrepresentation in the policy application, that has not been proven to be intentional, may trigger refusal to pay on the loss, but will not void the policy entirely.  That is the situation here.

The second argument is that RLI waived its coverage defense of material misrepresentation on the policy application because 1) it had a duty to conduct a reasonable investigation into the truth of the driver history statements on the Klonsky application; and 2) once it knew of the potential coverage defense, it failed to act on the information for five months, failed to communicate with the Klonskys or Rosatone, and continued to investigate the claim as if coverage existed.  "The burden of establishing a waiver is upon the party asserting it."

*Liberty Mut. Ins. Co. v. Cleveland*, 241 A.2d 60, 63 (Vt. 1968).

Waiver requires evidence of the "intentional relinquishment of a known right." *Fireman's Fund Ins. Co. v. Knutsen*, 324 A.2d 223, 230 (Vt. 1974). It may be express or implied. *Dunbar v. Farnum*, 196 A. 237, 241 (Vt. 1937). Therefore, if RLI knew, or should have known, of the misrepresented facts, and demonstrated that it intended to retain the Klonskys as an insurance risk, it may have waived its right to deny coverage based on material misrepresentations in the policy applications. *Knutsen*, 324 A.2d at 230.

In general, "one has no duty to investigate another's representation, but may rely on its truth." *Id.* at 229. However, as the Vermont Supreme Court in *Knutsen* pointed out, "the significant question is not whether an insurance company has a duty to investigate applications, but an underlying question, what is a reasonable burden to place on the insurer to avoid the consequences of operators carrying insurance obtained under false pretenses." *Id.*

In *Knutsen*, an insurer sought to void an automobile liability policy, and to obtain a declaration that it had no duty to defend any claims or pay any judgment arising out of an accident, on the ground of fraudulent misrepresentation on the insurance application. On the issue of whether the insurer had waived its right to void the policy for fraudulent

16

misrepresentations, the insureds argued that the insurer had a duty to investigate, and therefore should have known that its insured had misrepresented facts concerning his driving history.

In reaching its decision, the Vermont Supreme Court examined case law from other jurisdictions holding that an insurance company must conduct a reasonable investigation within a reasonable period after an application is accepted, in order to protect innocent victims of insureds who misrepresented facts on their insurance applications. *See Barrera v. State Farm Mut. Auto. Ins. Co.*, 456 P.2d 674, 677 (Cal. 1969) (imposing duty upon insurer to undertake a reasonable investigation within a reasonable time from the acceptance of the insurance application); *State Farm Mut. Auto. Ins. Co. v. Wood*, 483 P.2d 892, 893 (Utah 1971) (remanding for determination of whether insurer made a reasonably thorough and prompt investigation of an applicant's insurability after the policy issued).

Ultimately, however, the Court did not need to answer the question it posed: "what is a reasonable burden to place on the insurer to avoid the consequences of operators carrying insurance obtained under false pretenses." The Court observed that the Knutsens' insurer did conduct an investigation; it conducted a standard background investigation "that ordinarily produces the applicant's driving record" to confirm the answers on Knutsen's application. *Knutsen*, 324 A.2d at 230. The Court concluded that

17

this investigation was reasonable within the meaning of the *Wood* and *Barrera* cases. *Id.* It refused to find a broader duty to investigate beyond this routine investigation into the application's information: "such an investigation may be postulated only upon a general duty to investigate each routine application beyond the information contained therein; in short, a duty to suspect where no cause for suspicion arises." *Id.* at 231. Such a duty, the Court stated, could not be implied. *Id.*

*Knutsen*'s holding is best read as approval of a duty to conduct a reasonable investigation under the circumstances. *Id.* at 229-231; *see also Am. Centennial Ins. Co. v. Sinkler*, 903 F. Supp. 408, 411 (E.D.N.Y. 1995) (discussing abrogation, under New York law, of a common law right to rescind insurance contracts for fraud or misrepresentation except on notice pursuant to statute as furthering the public policy of ensuring compensation to accident victims); *State Farm Mut. Auto. Ins. Co. v. Kurylowicz*, 242 N.W.2d 530, 535 (Mich. App. 1976) (declaring the public policy of the state of Michigan that automobile accident victims have a source of recovery, and holding that unreasonable delay in discovering fraud or misrepresentation will result in waiver); *Fisher v. N.J. Auto. Fill Ins. Underwriting Ass'n*, 540 A.2d 1344, 1347 (N.J. Super. 1988) (distinguishing an insurance carrier's liability to its insured who has committed an act which would void the policy from its liability to an innocent injured

18

third person).

Given that what is reasonable will vary according to the facts of a case however, it will be the rare case in which a duty to investigate--or the performance of that duty--can be determined as a matter of law.

In the instant case RLI apparently conducted no investigation whatsoever.  A routine check of the Klonskys' Vermont MVRs would have disclosed the disqualifying driving history.  Under the circumstances, a finder of fact could very well conclude that failure to conduct a routine investigation into the accuracy of an applicant's tally of moving violations not only for himself but for the rest of his family over the preceding three years was unreasonable, and that as a consequence RLI should have known that there were misrepresentations on the application and the renewal application.  RLI therefore is not entitled to summary judgment on Count II with respect to Arthur Klonsky, because under the circumstances it may have waived its misrepresentation coverage defense by failing to conduct a reasonable investigation.  Without more factual development of the circumstances, this Court likewise cannot conclude that the Defendants are entitled to summary judgment on Count II on this ground, however.

As to the Defendants' second ground for waiver, it is undisputed that RLI received notice of the Rosatone claim on

February 3, 2009, that it obtained MVRs for the Klonskys on
February 6, 2009, and realized shortly thereafter that Arthur
Klonsky had made misrepresentations on his policy applications
creating a potential defense to the claim.  RLI did not
communicate that information to the Klonskys for approximately
five months.  RLI informed Progressive on February 10, 2009,
however, that it provided excess umbrella coverage for the
Klonskys, and it pursued an investigation of the Rosatone claim.
It also sent the Klonskys a renewal application for the Policy in
May 2009.

If RLI had an obligation to inform the Klonskys of a
potential coverage defense upon learning of Arthur Klonsky's
misrepresentations, and remained silent, it may have waived its
right to assert this defense.  *See Dunbar*, 196 A. at 241.
Evidence of such an implied waiver must be "unequivocal."  *Id.;
accord Anderson v. Coop. Ins. Cos.*, 2006 VT 1, ¶ 11, 895 A.2d
155, 159.  Given that "[i]ntent lies at the very basis of the
doctrine" of waiver, *Mears v. Farmers Co-op Fire Ins. Co.*, 28
A.2d 699, 701 (Vt. 1942), the second ground for waiver also
cannot be resolved on cross-motions for summary judgment.  The
undisputed facts do not unequivocally demonstrate that RLI by its
claims handling conduct intentionally relinquished its right to
void the Policy or to deny coverage for the Rosatone claim.
Furthermore, to prove implied waiver, the Klonskys must show that

20

they "honestly and reasonably believed," based on RLI's conduct, that RLI would forego denying them coverage, and that they acted to their detriment in reliance on that belief.  *Anderson*, 2006 VT 1 ¶ 11, 895 A.2d at 159.  This determination must await the finder of fact.

**C.   Counts I and II:  As to Jane Klonsky**

RLI seeks rescission of the Policy and to deny coverage for Jane Klonsky, based on the misrepresentations Arthur Klonsky made on the Policy application and renewal application.  Jane Klonsky did not provide any information to RLI, nor did she sign the applications.  The Defendants assert that Arthur Klonsky did not seek or obtain any information from Jane Klonsky when he answered the application questions, and that she did not review the applications that he submitted.

The Defendants argue that Jane Klonsky is therefore an "innocent co-insured," who remains covered under the Policy despite the material misrepresentations made by Arthur Klonsky. Under Vermont law, "[i]n general, an innocent co-insured may take under an insurance policy despite fraud committed by the other co-insured." *Knutsen*, 324 A.2d at 232.  In *Knutsen*, a co-insured's spouse misrepresented his driving history on an insurance application.  Both spouses had completed the insurance application; the wife's information was accurate, but the husband's contained material misrepresentations.  The trial court

21

found that the wife was not aware of the facts upon which her husband's misrepresentations were made.  The Vermont Supreme Court affirmed the application of the innocent co-insured doctrine with respect to the wife.  In addition, the Court found it significant that the policy expressly stated that it "applies separately to each insured against whom claim is made or suit is brought."  *Id.*

RLI contends that *Knutsen* is distinguishable, because in that case the spouses each answered questions about their own driving history, the wife responded accurately, and she was unaware of the falsity of her husband's statements.  In the instant case Arthur Klonsky alone completed and signed the applications.  Jane Klonsky was aware of at least some of the information that Arthur Klonsky misrepresented, and she was aware that Arthur Klonsky was applying for insurance.

RLI argues that Arthur Klonsky was therefore acting as Jane Klonsky's agent, and that she should not be permitted to disavow her husband's misrepresentations.  Under Vermont law "[t]here is no presumption that a husband acts for his wife by her authority, and the relationship of husband and wife does not of itself warrant the inference of such authority, although it is a circumstance entitled to consideration in connection with other circumstances tending to show an agency." *Jeffords v. Poor*, 55 A.2d 605, 607 (Vt. 1947).  "[A]n agency relationship may be

implied from the circumstances of a particular situation, and can arise from a single transaction," however. *State v. Poutre*, 581 A.2d 731, 735 (Vt. 1990).  An apparent agency relationship may exist if the principal has manifested by her conduct to a third party that the agent has authority to act for her, and the third party reasonably believes that the other individual is the agent. *Kimco Leasing Co. v. Lake Hortonia Props.*, 640 A.2d 18, 20 (Vt. 1993).  "Statements of the agent are insufficient to create an apparent agency relationship." *Id.*

Therefore, to demonstrate that Arthur Klonsky was acting as Jane Klonsky's agent, RLI must be able to prove that Jane Klonsky manifested to RLI that Arthur Klonsky had authority to act for her, and that RLI reasonably believed, based on her conduct, that Arthur Klonsky possessed that authority.  RLI has not pointed to evidence upon which this Court can conclude as a matter of law that Arthur Klonsky possessed either actual or apparent authority to act as agent for Jane Klonsky.

The *Knutsen* Court's determination that the innocent co-insured doctrine applied rested on the co-insured's knowledge of the false statements.  Likewise, in *Northern Security Insurance Co. v. Durenleau*, 2010 VT 92, ___ A.3d ___, where the co-insured spouse was unaware that his wife had made false statements in procuring an insurance policy, the Court upheld the application of the innocent co-insured doctrine.  *Id.* ¶ 8.  In *Knutsen*, the

23

innocent spouse was unaware of the underlying facts.   In *Durenleau*, the innocent spouse was aware of the underlying facts, but unaware of the misrepresentation.   The innocent spouse's lack of knowledge of the misconduct was the critical factor in both cases.   *See id.* ¶ 7 (commenting that the co-insured's unawareness of the misconduct was key to the decision on which *Knutsen* relied).

Unsurprisingly, the parties have divergent views of the evidence of Jane Klonsky's knowledge, neither of which is conclusive.   Although there is evidence that she was aware of her husband's driving record, and that he intended to apply for insurance, there is evidence that she did not review the application, nor did she pay attention to the details of the transaction, other than to pay the bill when it arrived.   Because the issue of Jane Klonsky's knowledge of her husband's misconduct remains in dispute, summary judgment for either party is inappropriate.

RLI also argues in a footnote that the Policy language plainly and unambiguously bars coverage for innocent co-insured spouses.   It contends that according to the Amendatory Endorsement, RLI may void the insurance if "you intentionally concealed or misrepresented any material fact . . ." and "will not pay for any loss or damage in any case of [] concealment or misrepresentation of a material fact . . . committed by you . . .

24

." Policy, Vt. Amendatory Endorsement 4, ECF No. 77-4, 77-8. "You" is defined in the Policy as "the person named in the Declarations as the Named Insured and his or her spouse who lives in the same household." Policy 1, ECF No. 77-4, 77-8. Both Arthur and Jane Klonsky are Named Insureds on the Policy.

The Policy also provides that "[t]his insurance applies separately to each person covered by this policy." *Id.* at 3. The *Knutsen* and *Durenleau* Courts found similar language to be an additional reason to uphold coverage for the innocent co-insured spouse. *See Knutsen*, 324 A.2d at 232; *Durenleau*, 2010 VT 92, ¶ 6.

Although the use of "you" in the Amendatory Endorsement can be construed to treat named insureds and their spouses collectively for purposes of fraud, concealment or misrepresentation, the language does not "plainly and unambiguously bar coverage for innocent co-insured spouses," particularly when considering the Policy language as a whole.

"In construing an insurance contract, [a court will] look at all the provisions of a contract together and view the policy in its entirety." *McAlister v. Vt. Prop. & Cas. Ins. Guar. Ass'n*, 2006 VT 85, ¶ 17, 908 A.2d 455, 461. The language in the Amendatory Endorsement can also reasonably be construed to mean that if any named insured or spouse commits the specified acts, the insurance is void or the insurer will not pay with respect to

claims against that individual.  When considered along with the
Policy language that informs the insured that this insurance
applies separately to each covered person, this interpretation of
the language would give effect to both provisions, and is at
least as reasonable as RLI's proffered interpretation.

Ambiguity exists "'where a writing in and of itself supports
a different interpretation from that which appears when it is
read in light of the surrounding circumstances, and both
interpretations are reasonable.'" *Waters v. Concord Grp. Ins.
Cos.*, 725 A.2d 923, 927 (Vt. 1999) (quoting *Webb v. U.S. Fid. &
Guar. Co.*, 605 A.2d 1344, 1346 (Vt. 1992)).  "Ambiguity in policy
language should be resolved in favor of the insured since the
insurer is in a far better position to avoid latent ambiguity in
the text of a policy." *Sanders v. St. Paul Mercury Ins. Co.*, 536
A.2d 914, 916 (Vt. 1987).

Construing the Policy as a whole, the use of "you" in the
Amendatory Endorsement is ambiguous.  The Court therefore does
not construe the language to deprive the innocent co-insured of
coverage.

Summary judgment on Counts I and II is denied with respect
to Jane Klonsky.  The Policy language does not bar the
application of the innocent co-insured doctrine, but without
factual development of the issue of Jane Klonsky's knowledge of
her husband's misrepresentations, the Court is unable to conclude

as a matter of law that the doctrine applies in this case.

## III. Counterclaims I & II

The Defendants have alleged that RLI violated chapter 93A of the Massachusetts General Laws in its dealings with Rosatone. Chapter 93A proscribes unfair or deceptive acts or practices in the conduct of any trade or commerce, Mass. Gen. Laws ch. 93A, § 2, and permits a person injured by such acts or practices to bring an action in a Massachusetts superior court. *Id.* § 9(1). The statute provides for up to treble damages if the violation is willful or knowing, *id.* § 9(3), and attorney's fees and costs. *Id.* § 9(4).

The Defendants have also alleged that RLI violated chapter 176D of the Massachusetts General Laws in its dealings with Rosatone. *See* Mass. Gen. Laws ch. 176D, § 3. Section 3(9) of that chapter describes various unfair insurance claim settlement practices, including, inter alia, "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies," § 3(9)(b); "[f]ailing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed" § 3(9)(e); and ""[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." § 3(9)(f). An individual, including a third-party claimant, who is injured by conduct prohibited by chapter 176D

has a cause of action under chapter 93A, section 9(1). *Mut. Ins. Co. v. Murphy*, 630 F. Supp. 2d 158, 163 (D. Mass. 2009); *Clegg v. Butler*, 676 N.E.2d 1134, 1138-39 (Mass. 1997).

As an initial matter, RLI contends that Vermont law should apply to these Massachusetts statutory claims.[3]  Vermont has adopted the Restatement (Second) of Conflicts for choice-of-law questions in tort and contract cases. *McKinnon v. F.H. Morgan & Co.*, 750 A.2d 1026, 1028 (Vt. 2000).  A necessary first step is to demonstrate an actual conflict, however. *See id.* at 1029; *Havill v. Woodstock Soapstone Co.*, 783 A.2d 423, 427 (Vt. 2001) (entry order).  Actual conflict exists "[w]here the applicable law from each jurisdiction provides different substantive rules," *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998), which are relevant to the issue at hand and have a significant possible effect on the outcome of the trial. *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005).

Different substantive rules are at issue here.  Vermont recognizes a common law claim against an insurance company for bad faith in handling first-party and third-party claims. *Bushey v. Allstate Ins. Co.*, 670 A.2d 807, 809 (Vt. 1995); it does not have a statutory counterpart to the Massachusetts statutes. Vermont's common law cause of action requires bad faith in

---

[3]  The Court exercises supplemental jurisdiction over these compulsory counterclaims.  28 U.S.C. § 1367(a); Fed. R. Civ. P. 13(a)(1).

handling a claim or denying coverage.  Massachusetts' statutory provisions permit recovery for "unfair" claims settlement practices, even if they are not "knowing" or "willful."  *See* Mass. Gen. Laws ch. 93A, § 9(3).  This "actual conflict" necessitates a conflict of laws analysis.

In general, a court will apply the local law of the state that has the most significant relationship to the occurrence and the parties.  Restatement (Second) of Conflict of Laws § 145 (1) (1971).  Relevant factors include:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

*Id.* § 6.

The outcome of the analysis depends upon whether the issue in the first and second counterclaims is coverage or claims handling.  If the issue is coverage, Vermont has the most significant relationship, because among other things, the Policy was obtained in Vermont through a Vermont insurance broker, the Policy was intended to comply with Vermont law, and the insureds reside in Vermont.  *See id.* § 145(2); *Vill. of Morrisville Water*

29

& *Light Dep't v. U.S. Fid. & Guar. Co.*, 775 F. Supp. 718, 723 (D.
Vt. 1991).  If the issue is claims handling, Massachusetts has
the most significant relationship, because the accident occurred
in Massachusetts, the injured party resides in Massachusetts, and
much of the investigation and claims handling occurred in
Massachusetts.  A fair reading of the Defendants' counterclaims
indicates that the first and second counterclaims focus on the
handling of Rosatone's claim.  Moreover, as the Defendants
clarified at oral argument, Counterclaims One and Two are brought
by Defendant Rosatone, not by the Klonskys.

Counterclaims I and II are governed by Massachusetts law.

RLI seeks summary judgment on Counterclaim I on the ground
that it did not violate chapter 93A.  It contends that the
conduct at issue must have occurred primarily and substantially
within Massachusetts in order to proceed under the statute.  This
argument fails for two reasons.  First, RLI is incorrect that the
relevant conduct must occur primarily and substantially within
Massachusetts.  Chapter 93A provides for two classes of
plaintiffs, persons who engage in the conduct of any trade or
commerce (§ 11) and any other person (§ 9).  Only § 11 plaintiffs
must satisfy the Massachusetts nexus.  The Defendants are not §
11 plaintiffs.  *See Kerlinsky v. Fidel. & Deposit Co. of Md.*, 690
F. Supp. 1112, 1117 (D. Mass. 1987).  Second, the conduct
associated with these counterclaims took place primarily and

substantially within Massachusetts--the accident, communications sent and received by Rosatone, and the investigation of Rosatone's claim.

RLI also contends that it is entitled to summary judgment on both counterclaims because its handling of the Rosatone claim was reasonable and no unfair trade practices occurred.  It asserts that it received notice of the accident in February 2009, assigned a claims examiner and conducted an investigation.  It did know, soon after the claim file was opened, that there was a potential ground for denying coverage.  It received notice on May 18, 2009 that the primary carrier, Progressive, was tendering the policy limits.  It received a chapter 93A demand letter from Rosatone on May 27, 2009 and responded with a denial on June 26, 2009.

The Defendants have failed to point to sufficient evidence to withstand summary judgment on claims alleging unfair settlement practices under Massachusetts law.  The "duty to settle arises when 'liability has become reasonably clear.'" *O'Leary-Alison v. Metro. Prop. & Cas. Ins. Co.*, 752 N.E.2d 795, 798 (Mass. App. Ct.), *review denied* 758 N.E.2d 628 (Mass. 2001). RLI's refusal to settle the claim was based on its conclusion that its insured's misrepresentations voided the Policy.  "Where an insurer's denial of coverage is correct there can be no violation of . . . [chapter 93A or [chapter] 176D." *Spurlin v.*

*Merchs. Ins. Co. of N.H.*, 866 F. Supp. 57, 62 (D. Mass. 1994).
Likewise "liability under [chapter] 176D and 93A does not attach
merely because an insurer concludes that it has no liability
under an insurance policy and that conclusion is ultimately
determined to have been erroneous." *Pediatricians, Inc. v.
Provident Life & Accident Ins. Co.*, 965 F.2d 1164, 1173 (1st Cir.
1992).  Whether or not RLI's interpretation of the Policy turns
out to have been mistaken, it has not violated subsection (f),
because liability was not "reasonably clear" at the time Rosatone
made her demand.

The Defendants object to the five-month delay between
receiving notice of the claim and denying coverage, claiming that
RLI violated its duty to affirm or deny coverage within a
reasonable time as required by subsection (9)(e); *see also* (9)(b)
(failing to acknowledge and act reasonably promptly upon
communications with respect to claims).  As an excess insurer,
RLI was not obligated to defend or provide coverage unless the
primary coverage was exhausted.  *See Fireman's Fund Ins. Co. v.
CNA Ins. Co.*, 2004 VT 93, ¶ 39, 862 A.2d 251, 265.  RLI received
notice in May 2009 that Progressive intended to tender the limits
of its policy.  RLI received Rosatone's demand in the same month,
and responded with a denial one month later.  The Defendants have
produced no evidence that the gap between tendering the primary
policy limits in May and denying coverage on the excess policy in

June was unreasonable or that it injured or prejudiced Rosatone
in any way.

RLI's motion for summary judgment on Counterclaim I and II
is therefore **granted;** the Defendants' motion for summary judgment
on Counterclaims I and II is **denied.**

## IV. Counterclaim III - Bad Faith

Vermont recognizes a cause of action against an insurance
company for bad faith in handling first-party and third-party
claims. *Bushey*, 670 A.2d at 809. The Defendants' third
counterclaim alleges that RLI had no reasonable basis to deny
coverage for Jane Klonsky. For an insured to establish a claim
of bad faith against her insurer, she "must show that (1) the
insurer had no reasonable basis to deny the insured the benefits
of the policy, and (2) the company knew or recklessly disregarded
the fact that it had no reasonable basis for denying the
insured's claim." *Peerless Ins. Co. v. Frederick*, 2004 VT 126, ¶
13, 869 A.2d 112, 116. "An insurance company may challenge
claims that are fairly debatable and will be found liable only
where it has intentionally denied . . . a claim without a
reasonable basis." *Bushey*, 670 A.2d at 809 (quotation marks and
citation omitted).

As discussed above, RLI's interpretation of the language of
the Amendatory Endorsement to preclude application of the
innocent co-insured doctrine was not unreasonable, and whether

Jane Klonsky may avail herself of the doctrine must be determined at trial.  Accordingly, RLI's motion for summary judgment on the Defendants' third counterclaim is **granted**; the Defendants' motion for summary judgment on the claim is **denied.**

## V.    Counterclaim IV - Breach of Contract

Counterclaim IV asserts that RLI has waived its defenses to coverage or is estopped from denying coverage, and that as an innocent co-insured Jane Klonsky is entitled to coverage.  As discussed above, RLI may have waived its defenses to coverage if the Defendants can establish that it knew or should have known of the misrepresented facts.  Neither party has established an absence of disputed material facts on the issue of waiver that would entitle it to summary judgment however.  Summary judgment on the issue of waiver is denied.  Summary judgment is also denied on the issue of whether Jane Klonsky may avail herself of the innocent co-insured doctrine, for the reasons previously stated.

The Defendants also claim that estoppel bars RLI from denying coverage in this case.  Equitable estoppel has four essential elements:

> first, the party to be estopped must know the facts;
> second, the party being estopped must intend that his
> conduct shall be acted upon or the acts must be such
> that the party asserting the estoppel has a right to
> believe it is so intended; third, the latter must be
> ignorant of the true facts; and finally, the party
> asserting the estoppel must rely on the conduct of the
> party to be estopped to his detriment.

34

*Beecher v. Stratton Corp.*, 743 A.2d 1093, 1096 (Vt. 1999).  The
parties have concentrated on the fourth element.  To establish
this element of estoppel, the Klonskys[4] must be able to
demonstrate that they "suffered a deleterious change in position
in reliance on misleading representations or conduct of the party
sought to be estopped."  *Hebert v. Jarvis & Rice & White Ins.,
Inc.*, 365 A.2d 271, 274 (Vt. 1976); *accord Town of Brattleboro v.
Travelers Ins. Co.*, 449 A.2d 945, 946 (Vt. 1982); *see also Farm
Bureau Mut. Auto. Ins. Co. v. Houle*, 102 A.2d 326, 330 (Vt. 1954)
("He who claims an equitable estoppel must show that he has been
misled and thereby prejudiced by the conduct of the other
party."); *Royce v. Carpenter*, 66 A. 888, 892 (Vt. 1907) ("There
can be no estoppel unless the party alleging it relied upon the
representation--whether in words, acts or silence--of the party
to be estopped, was induced to act by it, and, thus relying and
induced, did take some action.").

The Klonskys assert that RLI delayed five months before
denying coverage on Rosatone's claim, during which time
Rosatone's settlement demand rose from $1 million to $2 million.
They claim that they were substantially prejudiced by this delay.
After RLI denied coverage, Rosatone filed suit in Massachusetts.
The Klonskys settled the suit for $2.5 million, and assigned

---

[4]  The Defendants do not assert an estoppel claim on behalf
of Rosatone.

their rights under the RLI Policy in exchange for a covenant not
to execute against the Klonskys' personal assets.

RLI argues that the Klonskys have not suffered any harm
because of the alleged delay, because the settlement with
Rosatone protected them from any exposure to an increased demand.
The Klonskys suggest that the existence of the judgment "could
adversely affect the Klonskys' available credit for potential
loans," "it is better for an insured to attempt to settle a $1.0
million demand than a $2.0 million demand," and that had they
been informed earlier they might have been able to avoid being
sued.  They also claim that they suffered emotional distress when
they realized they were facing a potential liability of more than
two million dollars with no insurance coverage, which would have
been lessened had they been able to negotiate an agreement based
upon a one million dollar claim."  Defs.' Consolidated Mem. 11,
ECF No. 83.  In a supplemental memorandum they also assert that
RLI has suggested that it may file a contribution claim against
Arthur Klonsky should judgment be entered in favor of Jane
Klonsky in this case.  The Klonskys argue that they are
prejudiced in their ability to defend against such an action by
having settled with Rosatone and relinquished their rights under
the Progressive policy, when they might have been able to
negotiate a more favorable settlement earlier.

To withstand summary judgment on this element of estoppel

36

the Klonskys must be able to point to facts, not speculation.
They have failed to show that they have admissible evidence to
support their contention that they suffered prejudice from the
five months that they believed they had excess liability
coverage.  Moreover, Arthur Klonsky is in a poor position to
invoke equitable estoppel:  generally the doctrine "'will not be
invoked in favor of one whose own omissions or inadvertences
contributed to the problem.'"  *Beecher*, 743 A.2d at 1096 (quoting
*Fisher v. Poole*, 453 A.2d 408, 412 (Vt. 1982)).

The Defendants' motion for summary judgment on Counterclaim
IV is **denied**; RLI's motion for summary judgment on the claim is
**granted** as to estoppel **and denied** as to waiver and the
application of the innocent co-insured doctrine.

**VI.  Counterclaim V - FCRA**

The Defendants allege that RLI violated the federal Fair
Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681-1681x, by
obtaining the Klonskys' consumer reports for an impermissible
purpose.

The primary purpose of the FCRA is to ensure that consumer
reporting agencies provide accurate, fair, impartial information
with a respect for a consumer's right to privacy.  *See* § 1681(b).
A consumer may pursue a civil action against one who willfully
fails to comply with the FCRA's requirements.  § 1681n.

A consumer report, for purposes of the Act, means

37

> any written, oral, or other communication of any
> information by a consumer reporting agency bearing on a
> consumer's credit worthiness, credit standing, credit
> capacity, character, general reputation, personal
> characteristics, or mode of living which is used or
> expected to be used or collected in whole or in part
> for the purpose of serving as a factor in establishing
> the consumer's eligibility for -- (A) credit or
> insurance . . . .

15 U.S.C. § 1681a(d)(1).  Insurance underwriting is one of the permissible purposes for which a consumer reporting agency may furnish a consumer report.  15 U.S.C. § 1681b(a)(3)(C).

MVRs are considered to be consumer reports when they are sold by state motor vehicle departments for insurance underwriting purposes and contain information bearing on a consumer's "personal characteristics," such as arrest information.  16 C.F.R. Pt. 600, App. § 603(d)(4)(C); *see also Hodge v. Texaco, Inc.*, 975 F.2d 1093, 1095 (5th Cir. 1992) (noting that the Federal Trade Commission has interpreted the FCRA to apply to MVRs).  Underwriting purposes include, among other things, the decision whether or not to issue a policy, the amount and terms of coverage, and whether to renew or cancel a policy, but an insurer may not obtain a consumer report for the purposes of evaluating a claim.  16 C.F.R. Pt. 600, App. § 604(3)(C)(1), (2).

RLI certified to iiX that it sought the Klonskys' MVRs for underwriting purposes, and it argues here that it obtained the Klonskys' MVRs upon receiving notice of the Rosatone claim

strictly for underwriting purposes.  It is undisputed, however, that RLI's claims department also received the Klonskys' MVRs, and used the information to determine that the Klonskys were not entitled to coverage on the Rosatone claim.

RLI argues that the Klonskys' MVRs do not qualify as consumer reports because they did not contain any information bearing on their "personal characteristics."  In order to obtain the Klonskys' MVRs, however, RLI had to certify to iiX that the MVRs would only be used for underwriting purposes.  RLI obtained the MVRs from iiX because they qualified as consumer reports. Indeed, pursuant to the FCRA, RLI advises applicants for its insurance that it may obtain consumer reports that include driving record information, and secures their consent to disclosure.  *See* PUP Appl. 4, ECF No. 77-2; PUP Renewal Appl. 2, ECF No. 77-7.

RLI also argues that its use of the MVRs did not violate the FCRA, because it obtained them for permissible underwriting purposes:  verifying the accuracy of the information in the insurance applications, determining whether or not to renew the Policy, and determining whether to rescind the Policy.  If a user had a permissible purpose to obtain a consumer report, then the user did not obtain the report under false pretenses, or for an impermissible purpose.  *See Popik v. Am. Int'l Mortg. Co.*, 936 F. Supp. 173, 176 (S.D.N.Y. 1996); *see also Scott v. Real Estate*

*Fin. Grp.*, 183 F.3d 97, 99 (2d Cir. 1999) (report requester does not obtain information under false pretenses if he has an independent legitimate basis for requesting the report).  But if a user certifies to a consumer reporting agency that it is requesting consumer reports for a permissible purpose and then uses the information for an impermissible purpose, the user may be liable for violating the FCRA.  *See Popik*, 936 F. Supp. at 176.

RLI's stated purposes for obtaining the Klonskys' MVRs may well be legitimate underwriting purposes, but it is telling that RLI only decided to assess the risk of insuring the Klonskys after receiving notice of a substantial claim against them.  And three months after the underwriting department obtained the Klonskys' MVRs, RLI sent the Klonskys a renewal notice for the Policy.  RLI's action seeking to void the policy followed the claims department's denial of coverage for the Rosatone claim; it was not an underwriting decision.  *See* Driscoll Dep. 112:15-17, July 23, 2010, ECF No. 83-4.

Further development of the factual circumstances surrounding the acquisition and use of the Klonskys' MVRs is necessary to determine whether RLI violated the FCRA.  RLI's stated purposes are well within the permissible, but the timing of the MVR request and the use to which the MVRs were put casts some doubt on the legitimacy of the activity.

40

Accordingly, both motions for summary judgment on Counterclaim Count V are **denied.**

### Conclusion

The Defendants' motion for summary judgment, ECF No. 65, is **denied.** RLI's motion for summary judgment, ECF No. 74 is **granted in part and denied in part.** Counterclaim Counts I, II and III are **dismissed.** The estoppel portion of Counterclaim Count IV is **dismissed.**

Dated at Burlington, Vermont this 11th day of February, 2011.

/s/ William K. Sessions III
William K. Sessions III
District Judge

41